# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- x

In re:                    :       Chapter 11

SIENNA BIOPHARMACEUTICALS, INC.,   :       Case No. 19-12051 (MFW)

Debtor.[1]         :

                      :       **Ref. Docket No. 10**

-------------------------------------------------------- x

## INTERIM ORDER (I) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b) AND LOCAL RULE 4001-2, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Sienna Biopharmaceuticals, Inc., as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), for entry of orders (a) authorizing the Debtor to use Cash Collateral, (b) granting adequate protection to the Debtor's Prepetition Lender (defined below), (c) scheduling a final hearing on the Motion pursuant to Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and (d) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties under the circumstances, and it appearing

---

[1]   The last four digits of the Debtor's federal tax identification number are 4627. The Debtor's mailing address is 30699 Russell Ranch Road, Suite 140, Westlake Village, California 91362.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or in the Prepetition Credit Documents (as defined below), as applicable.

that no other or further notice need be provided; and this Court having held a hearing to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and upon the First Day Declaration, the record of the Hearing, and all proceedings had before this Court; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate as contemplated by Bankruptcy Rule 6003; and after due deliberation and sufficient cause appearing therefor

**BASED ON THE MOTION, THE FIRST DAY DECLARATION, AND THE DEBTOR'S STIPULATIONS, THE COURT FINDS THAT:**

A.      Petition Date.  On September 16, 2019, the ("**Petition Date**"), the Debtor filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.

B.      Debtor in Possession.  The Debtor continues to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the chapter 11 case.

C.      Jurisdiction and Venue.   This Court has jurisdiction over these proceedings, and the persons and properties affected hereby, pursuant to 28 U.S.C. § 157(b) and 1334.  Venue is proper pursuant to 28 U.S.C. § 1408 and 1409.  The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

D.      Creditors' Committee.  As of the date hereof, the United States Trustee for the District of Delaware (the "**United States Trustee**") has not yet appointed an official committee of unsecured creditors in the chapter 11 case pursuant to section 1102 of the Bankruptcy Code (a "**Creditors' Committee**").

E.    <u>Debtor's Stipulations</u>.  Subject to the provisions of paragraphs 8 and 9 of this Interim Order, the Debtor stipulates and agrees (collectively, the "**Debtor's Stipulations**") as follows:

1.    <u>Cash Collateral</u>.  Any and all of the Debtor's cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtor, and any amounts generated by the collection or other disposition of the Prepetition Collateral existing as of the Petition Date, and the proceeds of any of the foregoing is the Prepetition Lender's cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

2.    <u>Prepetition Credit Agreement and Obligations</u>.  The Debtor is party to that certain Loan and Security Agreement, dated as of June 29, 2018 (as the same has been and may be amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Credit Agreement**," together with all other loan documents, security instruments, and other documents related to, referenced in or executed in connection with the Prepetition Credit Agreement prior to the Petition Date, the "**Prepetition Credit Documents**"), with Silicon Valley Bank (together with any co-lenders or other lending parties thereto, collectively the "**Prepetition Lender**") pursuant to which the Prepetition Lender originally provided the Debtor with access to term loans (the "**Prepetition Facility**").  On January 28, 2019, the Debtor and the Prepetition Lender entered into an amendment to the Prepetition Credit Agreement, which reduced the Debtor's total access to the Prepetition Facility to $30.0 million.  The Debtor may prepay the outstanding principal balance of the term loans advanced by the Prepetition Lender in whole but not in part, subject to a prepayment fee ranging from 1.0% to 3.0% of any amount prepaid (each, the "**Prepayment Fee**"), depending upon when the prepayment occurs.  In addition, pursuant to the foregoing amendment, the Debtor is also required to pay a final payment fee equal to 6.50% of the total term loans advanced (the "**Final Payment Fee**"), due upon the earliest of maturity, acceleration, prepayment, or termination of the Prepetition Credit Agreement.

3.    To secure the Prepetition Loan Obligations (as defined below), and pursuant to the Prepetition Credit Documents, the Debtor granted to the Prepetition Lender security interests in and liens on certain assets of the Debtor as described in the Prepetition Credit Documents (the "**Prepetition Liens**"), including, without limitation, all goods, Accounts (including health-care receivables), Equipment, Inventory, contract rights or rights to payment of money, leases, license agreements, franchise agreements, General Intangibles (subject to certain exclusions), commercial tort

claims, documents, instruments (including any promissory notes), chattel paper (whether tangible or electronic), cash, deposit accounts, fixtures, letters of credit rights (whether or not the letter of credit is evidenced by a writing), securities, and all other investment property, supporting obligations, and financial assets of the Debtor, whether owned or acquired, wherever located (collectively, subject to certain exclusions set forth in the Prepetition Credit Documents, the "**Prepetition Collateral**").    The Prepetition Collateral also includes a pledge of 65% of the shares of Holdings.  The Prepetition Collateral *excludes* the Intellectual Property.[3]

4.    As a condition to the Prepetition Lender's consent to use of the Cash Collateral pursuant to this Interim Order, on September 16, 2019, prior to the filing of this chapter 11 case, the Debtor made a payment to the Lender in the amount of $21,300,000, consisting of $20,000,000 in principal and $1,300,000 on account of the Final Payment Fee (the "**Prepetition Loan Payment**").  In connection therewith, the Prepetition Lender agreed to waive the Prepayment Fee on the Prepetition Loan Payment in an amount equal to $400,000.

5.    As of the Petition Date, the principal amount outstanding under the Prepetition Credit Documents was approximately $10,000,000 (together with all debt, principal, interest, fees, Bank Expenses, the remaining portions of the Prepayment Fee and the Final Payment Fee, and other amounts owed to the Prepetition Lender by the Debtor pursuant to the Prepetition Credit Documents relating to the loans provided thereunder, the "**Prepetition Loan Obligations**").

6.    The Prepetition Liens granted to the Prepetition Lender in the Prepetition Collateral pursuant to and in connection with the Prepetition Credit Documents, (i) are valid, binding, perfected, and enforceable first priority liens and security interests in the Prepetition Collateral, (ii) are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, (iii) as of the Petition Date are subject and/or subordinate only to valid,

---

[3]    As defined in the Prepetition Credit Agreement, "Intellectual Property" means "with respect to any Person, all of such Person's right, title, and interest in and to the following: (a) its Copyrights, Trademarks and Patents; (b) any and all trade secrets and trade secret rights, including, without limitation, any rights to unpatented inventions, know-how, operating manuals; (c) any and all source code; (d) any and all design rights which may be available to such Person; (e) any and all claims for damages by way of past, present and future infringement of any of the foregoing, with the right, but not the obligation, to sue for and collect such damages for said use or infringement of the Intellectual Property rights identified above; and (f) all amendments, renewals and extensions of any of the Copyrights, Trademarks or Patents."

Furthermore, the Prepetition Credit Agreement provides that to the extent that a judicial authority holds that a security interest in the Intellectual Property is necessary to a security interest in such right of payment, the then Prepetition Collateral is to include the Intellectual Property, to the extent necessary to secure the Prepetition Lender's right to payment

perfected, and unavoidable liens and security interests existing as of the Petition Date that are senior in priority to the Prepetition Liens of the Prepetition Lender as permitted by the terms of the Prepetition Credit Documents, and (iv) constitute the legal, valid, and binding obligation of the Debtor, enforceable in accordance with the terms of the applicable Prepetition Credit Documents.

7.     The Debtor and its estate have no claims, objections, challenges, offsets, causes of action and/or choses in action of any kind against the Prepetition Lender, or any of its respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees (in each case, in their respective capacities as such), including, without limitation, avoidance claims under chapter 5 of the Bankruptcy Code.

F.     <u>Necessity for Relief Requested, Immediate and Irreparable Harm</u>.   The Debtor requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).   The Debtor has an immediate need to use Cash Collateral to, among other things, preserve and maintain the going concern value of the Debtor and pursue a sale or investment to maximize value for all stakeholders, absent which immediate and irreparable harm will result to the Debtor, its estate, and its creditors.   The preservation and maintenance of the Debtor's assets and business is necessary to maximize the value of the Debtor's estate.   Absent the Debtor's ability to use Cash Collateral, the Debtor would have limited sources of working capital and financing and would be unable to pay its operating expenses or maintain its assets, potentially jeopardizing its reorganization efforts (including its marketing and sale efforts), to the detriment of its estate and creditors.   Accordingly, the relief requested in the Motion and the terms herein are (i) critical to the Debtor's ability to maximize the value of Debtor's estate, (ii) in the best interests of the Debtor and its estate, and (iii) necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtor, its creditors, and its assets, remaining business, goodwill, and reputation.

G.      <u>Good Cause</u>.  Good cause has been shown for entry of this Interim Order, and the entry of this Interim Order is in the best interests of the Debtor and its estate and creditors.  Among other things, the relief granted herein will minimize disruption of the Debtor's business and permit the Debtor to preserve and maintain the going concern value of the Debtor and pursue a sale or investment to maximize value for all stakeholders.  The stipulated terms of the Debtor's use of Cash Collateral and proposed adequate protection arrangements, as set forth in this Interim Order, are fair and reasonable under the circumstances, and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

H.      <u>Good Faith</u>.  The Debtor's use of Cash Collateral has been negotiated in good faith and at arms' length among the Debtor and the Prepetition Lender and the Prepetition Lender's consent to the Debtor's use of Cash Collateral shall be deemed to have been made in "good faith."

I.      <u>Notice</u>.   The Debtor has caused notice of the Motion and the relief requested therein to be served by facsimile, email, overnight courier, or hand delivery on Notice Parties: (a) the Office of the United States Trustee for the District of Delaware (Attn: Linda Richenderfer); (b) the holders of the 20 largest unsecured claims against the Debtor; (c) counsel to the Prepetition Lender, Sheppard, Mullin, Richter & Hampton LLP, Four Embarcadero Center, 17th Floor, San Francisco, CA 94111 (Attn:  Ori Katz); (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.

**BASED UPON THE STIPULATED TERMS SET FORTH HEREIN, AND FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      <u>Motion Granted</u>.  The Motion is granted on an interim basis, as set forth herein.

2.      <u>Authorization to Use Cash Collateral</u>.  The Debtor is authorized to use Cash Collateral solely in accordance with and pursuant to the terms and provisions of this Interim Order.

3.      <u>Budget and Reporting</u>.

a.      Except as otherwise provided herein, unless otherwise authorized by this Court or agreed upon by the Prepetition Lender, the Debtor may only use Cash Collateral for, among other things, (i) working capital, (ii) general corporate purposes, (iii) any KEIP/KERP Amounts (as defined below and subject to Court approval thereof), and (iv) the costs and expenses of administering the chapter 11 case (including the payment of the allowed fees and expenses of the Retained Professionals (as defined below), and payments under the Carve-Out (if any) as provided herein), in each case, pursuant to the Budget; *provided, however,* that the Debtor shall be permitted to (i) carry over any amounts not expended in any week to succeeding weeks, (ii) expend up to 10% more than the amounts set forth for a specific week in such week so long as the aggregate expenditures during the period covered by this Interim Order do not exceed the total shown on the Budget for such interim period by more than 10% (such amount set forth in clauses (i) and (ii), "**<u>Permitted Variance</u>**"), and (iii) pay amounts incurred from and after the Petition Date, in addition to or for categories not listed in the Budget with the prior written consent of the Prepetition Lender; *provided* that notwithstanding anything to the contrary in this Interim Order, the Professional Fees (as defined below) shall be due, payable, and paid in

accordance with any applicable order of this Court, notwithstanding any budgeted amounts for such fees, costs, and expenses set forth in the Budget and Permitted Variance to the Budget shall not be tested with regard to Professional Fees; *provided*, *further*, that, solely with respect to the Carve-Out, as set forth in paragraph 5 below, Professional Fees shall be limited to the Budget, subject to Permitted Variance, unless otherwise agreed by the Prepetition Lender; *provided*, *further*, that total disbursements under the Budget (including Professional Fees) shall not exceed $7,500,000 in the aggregate (the "**Aggregate Budgeted Expenditure Limit**").    For the avoidance of doubt nothing in this Interim Order shall authorize the sale or other disposition of any asset of the Debtor or its estate outside the ordinary course of business or any disbursement of the proceeds resulting therefrom except as expressly permitted hereunder and in accordance with the Budget or order of this Court.

b.    On Wednesday of every week, commencing on September 25, 2019, the Debtor shall provide the Prepetition Lender with an updated rolling 13-week cash flow statement, which shall include a variance report comparing actual cash flow results for all applicable prior periods to the forecasted cash flow results for such periods, a statement of any weekly or cumulative variances in any line item for receipts or disbursements and any proposed amendments to the Budget.  Any proposed amendments to the Budget shall not become effective until such amendments have been approved by the Prepetition Lender in writing, and absent the written consent of the Prepetition Lender, the existing Budget shall remain in effect; *provided*, *however*, that the Prepetition Lender shall have one week after its receipt of any updated "rolling Budget" to approve each updated "rolling budget," and unless the Prepetition Lender timely provides written notice to the Debtor of any objection to such updated "rolling budget," the Prepetition Lender shall be deemed to have approved such updated "rolling budget."

01:25194015.1
US-DOCS\110406575.6

c.      The Debtor shall also continue to provide the Prepetition Lender with the financial reports required to be provided under the Prepetition Credit Agreement on the dates when due thereunder; *provided* that in the event audited financial statements are not available for the Debtor within the periods specified in the Prepetition Credit Agreement, the Debtor shall not be required to deliver such financial statements.

4.      <u>Adequate Protection</u>.  As adequate protection, subject and subordinate to the Carve-Out and the KEIP/KERP Amount (as defined below), pursuant to sections 361, 363(e) and 364 of the Bankruptcy Code, and in consideration for the stipulations and consents set forth herein, as adequate protection for any postpetition diminution in value of the Prepetition Lender's interests in the Debtor's interests in the Prepetition Collateral (including the Cash Collateral) as a result of the Debtor's use, sale or lease of the Prepetition Collateral (any "**Diminution in Value**"), the Prepetition Lender is hereby granted the following:

a.      <u>Adequate Protection Liens</u>.  Subject and subordinate to the Carve-Out and the KEIP/KERP Amount, the Prepetition Lender is hereby granted additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected postpetition liens on, and security interests in, all property and assets of the Debtor that were subject to the Prepetition Liens and, to the extent permissible under existing contracts, on all of the Debtor's Intellectual Property, whether now owned or hereafter acquired or existing and wherever located, of the Debtor and the Debtor's estate (as created pursuant to section 541(a) of the Bankruptcy Code) of any kind or nature whatsoever and all proceeds, rents, or profits thereof, (the "**Adequate Protection Liens**"), to the extent of any Diminution in Value, including, without limitation, such diminution resulting from use of Cash Collateral.  For the avoidance of doubt, the Adequate Protection Liens shall not attach to any causes of action under sections 544, 545, 547, 548 and

550 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code (collectively, the "**Avoidance Actions**") and any proceeds thereof.

b.       Adequate Protection Superpriority Claims.  Subject and subordinate to the Carve-Out and the KEIP/KERP Amount, as additional adequate protection, to the extent that the aggregate Diminution in Value of the Prepetition Lender's interests in the Prepetition Collateral from and after the Petition Date reduces the value of the Adequate Protection Liens below the outstanding balance of the Prepetition Loan Obligations, then the Prepetition Lender will be granted, to the extent of the net decrease, pari passu superpriority claims under section 507(b) of the Bankruptcy Code (the "**Adequate Protection Superpriority Claims**" and, together with the Adequate Protection Liens, the "**Adequate Protection**"); *provided* that no Adequate Protection Superpriority Claims will attach or apply to any Avoidance Actions and any proceeds thereof.

c.       Postpetition Payment and Accrual of Interest.  As further adequate protection to the Prepetition Lender, the Prepetition Loan Obligations shall be paid interest at the default contract rate after the Petition Date in accordance with the Prepetition Credit Documents.

d.       Postpetition Payment of Lender Professional Fees.  As further adequate protection, all reasonable fees and expenses incurred after the Petition Date by the advisors to the Prepetition Lender, including lead counsel or any other local counsel to the Prepetition Lender (the "**Prepetition Lender Professionals**"), including any unpaid fees, costs, and expenses accrued prior to the Petition Date, shall be paid subject to the notice procedures set forth below with respect to postpetition professional fees, costs, and expenses.  The fees, costs, and expenses of the Prepetition Lender Professionals are not included in the Budget and shall not be taken into account in connection with determining compliance with the Budget, Permitted Variance or the Aggregate Budgeted Expenditure Limit.  All Prepetition Lender Professional shall not be

required to comply with the United States Trustee fee guidelines or submit invoices to this Court. Copies of invoices shall be submitted by each Prepetition Lender Professional to the Debtor, and the United States Trustee, counsel for the Creditors' Committee, and such other parties as this Court may direct. The invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses; *provided, however*, that such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or other applicable privilege. If the Debtor, United States Trustee, the Creditors' Committee, or other recipient objects by written notice to the applicable Prepetition Lender Professional to the reasonableness of the fees and expenses of any such professional and such objection is not resolved by the applicable parties, then the Debtors, United States Trustee, the Creditors' Committee, or other recipient, as the case may be, shall file with this Court and serve on such Prepetition Lender Professional an objection (the "**Fee Objection**") within 14 days of receipt of such invoice in accordance with this paragraph. The Debtor shall timely pay in accordance with the terms and conditions of this Interim Order (a) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed and (b) all fees, costs and expenses on any invoice to which no Fee Objection has been timely filed.

   e. <u>Reallocation of Adequate Protection Payments</u>.  Notwithstanding anything to the contrary herein, all adequate protection payments made pursuant to this paragraph 4, subsection e shall be reapplied to reduce the principal amount of the Prepetition Loan Obligations (or disgorged if all such principal has been repaid in full), as applicable, to the extent

that the Court determines that the Prepetition Lender is not entitled to interest, fees and expenses payable pursuant to the Prepetition Credit Documents after the Petition Date under section 506(b) of the Bankruptcy Code.

   5. <u>Carve-Out</u>.

   a. <u>Carve-Out</u>.  For purposes hereof, "**<u>Carve-Out</u>**" means the sum, without duplication, of: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable and documented fees, costs and expenses up to $30,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent and set forth in the Budget (subject to Permitted Variance) and allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees, costs and expenses, including, without limitation, success fees, of professionals retained pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**<u>Professional Fees</u>**") incurred by persons or firms retained by the Debtor or the Creditors' Committee (collectively, the "**<u>Retained Professionals</u>**") at any time on or prior to the first business day following delivery by the Prepetition Lender of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice and without regard to whether such fees, costs and expenses are or were invoiced after the Carve-Out Trigger Date (as defined below); and (iv) Professional Fees incurred after the first business day following delivery by the Prepetition Lender of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order or otherwise in an aggregate amount not to exceed $500,000 (the foregoing amounts set forth in clauses (i)-(iv), collectively, the "**<u>Carve-Out Cap</u>**"); *provided*, *however*, the Carve-Out Cap

shall be reduced dollar for dollar to the extent of Professional Fees have previously been paid to the applicable professional.  For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Lender to Latham & Watkins LLP as the Debtor's lead restructuring counsel, the United States Trustee, lead counsel to the Creditors' Committee, and any other official or unofficial committee in this chapter 11 case, which notice may be delivered only following the occurrence and during the continuation of a Termination Event (as defined below), and shall expressly state that the Carve-Out Cap has been invoked.  Notwithstanding the foregoing: (i) the Aggregate Budgeted Expenditure Limit does not include any transaction fees owing to Cowen and Company LLC ("**Cowen**") pursuant to its engagement letter; and (ii) solely for purposes of the Carve-Out, transaction fees owing to Cowen under Cowen's engagement letter shall be payable from proceeds of such transaction and, solely for purposes of the Carve-Out, Cowen will not seek payment of such fees in an amount in excess of 10% of gross transaction proceeds unless otherwise agreed by the Prepetition Lender, *provided* that (A) no crediting of monthly fees shall be taken into consideration in determining the amount payable to hereunder (for example, if a transaction yields $5,000,000 in gross proceeds, Cowen would be entitled to a transaction fee as part of the Carve-Out equal to $500,000 in addition to any monthly fees), and (ii) to the extent that the Debtor has not utilized the Aggregate Budgeted Expenditure Limit, the Debtor shall be permitted to use Cash Collateral and/or transaction proceeds to pay additional amounts due to Cowen pursuant to Cowen's engagement letter, in each case, subject to allowance of Cowen's transaction fee by the Court.

       b.    <u>Carve-Out Reserve</u>.   On the day on which a Carve-Out Trigger Notice is delivered to the Debtor, such Carve-Out Trigger Notice shall constitute a demand to the Debtor

to utilize all cash on hand as of such date and any available cash thereafter held by the Debtor to fund a reserve in an aggregate amount equal to the Carve-Out Cap (including any invoiced or estimated amounts related to the period on or before receipt of a Carve-Out Trigger Notice), and the Debtor shall deposit and hold any such amounts in a segregated account in trust for the Retained Professionals (the "**Professional Fees Reserve**") (it being understood that the Prepetition Lender shall have a lien and security interest in any residual amount of such segregated account).   Prior to converting the chapter 11 case to a case under chapter 7, the Debtor will return the unused portion of the Professional Fee Reserve to Prepetition Lender.   For the avoidance of doubt, so long as the Carve-Out Trigger Notice shall not have been received, except as expressly provided above, the Carve-Out shall not be reduced by the payment of fees to the Retained Professionals allowed at any time by this Court.   For the avoidance of doubt and notwithstanding anything herein to the contrary, following a termination of the Debtor's authorization to use Cash Collateral, the Prepetition Lender shall not sweep or foreclose on cash (including cash received as a result of the sale of any assets) of the Debtor until the Professional Fees Reserve shall have been fully funded, but the Prepetition Lender shall have a first priority, fully perfected, non-avoidable security interest in any residual interest in the Professional Fees Reserve, with any excess paid to the Prepetition Lender for application in accordance with the terms of this Interim Order and the Prepetition Credit Documents.

c.      No Direct Obligation To Pay Allowed Professional Fees.  The Prepetition Lender shall not be responsible for the payment or reimbursement of any fees or disbursements of any Retained Professionals incurred in connection with the chapter 11 case or any successor cases under any chapter of the Bankruptcy Code.   Nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Lender, in any way, to pay compensation to, or to

reimburse expenses of, any Retained Professionals or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.

d.      <u>Payment of Allowed Professional Fees Prior to the Carve-Out Trigger Date</u>.  So long as a Carve-Out Trigger Notice has not been delivered as provided above: (i) the Debtor shall be permitted to pay Professional Fees allowed and payable under sections 328, 330 or 331 of the Bankruptcy Code or other order of this Court, as the same may become due and payable, including on an interim basis; and (ii) such payments shall not reduce, or be deemed to reduce, the Carve-Out, except as expressly provided above.

e.      <u>Payment of Carve-Out On or After the Carve-Out Trigger Date</u>.  Any payment or reimbursement made on or after the occurrence of the Carve-Out Trigger Date in respect of any Professional Fees incurred after the first business day following delivery by the Prepetition Lender of the Carve-Out Trigger Notice shall permanently reduce the Carve-Out Cap on a dollar-for-dollar basis; *provided* that the Debtor has funded the Professional Fees Reserve.

f.      <u>Carve-Out Priority</u>.  For the avoidance of doubt and notwithstanding anything to the contrary herein or in the Prepetition Credit Documents, the Carve-Out (including funds in the Professional Fees Reserve) shall be senior to all liens and claims securing the Prepetition Credit Documents and the Adequate Protection Liens, Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Loan Obligations, and senior in right of payment to all Prepetition Loan Obligations and Adequate Protection Superpriority Claims.

g.      <u>Payment of Compensation</u>.  Nothing herein shall be construed as consent to the allowance of any Professional Fees or expenses of any of the Debtor, the Creditors' Committee, any other official or unofficial committee in this chapter 11 case, or of any other

person or entity, or shall affect the right of the Prepetition Lender to object to the allowance and payment of such fees and expenses.

h.    Funding of KEIP/KERP.  Prior to the Petition Date, the Debtor adopted a key employee incentive plan for certain executive employees (the "**KEIP**"), and a key employee retention plan for non-executive employees (the "**KERP**") for which the Debtor intends to seek Court approval.  Subject to Court approval of the KEIP and KERP, the Debtor shall be permitted to use Cash Collateral and proceeds of any other Prepetition Collateral to make and/or reserve for payments pursuant to the KEIP and KERP, notwithstanding the occurrence of any Termination Event (the aggregate amount due and owing on any date of determination in to one or more participants under the KEIP and KERP as approved by the Court, the "**KEIP/KERP Amount**").  Notwithstanding anything herein to the contrary, following a termination of the Debtor's authorization to use Cash Collateral, the Prepetition Lender shall not sweep or foreclose on cash (including cash received as a result of the sale of any assets) of the Debtor until any KEIP/KERP Amount shall have been paid.  Notwithstanding anything in this Interim Order to the contrary, any provisions of this Interim Order referencing the KEIP/KERP Amount shall be subject to and effective upon entry of the Final Order.

6.    Termination Events.    Each of the following events constitutes a termination event (each a "**Termination Event**") unless waived by the Prepetition Lender:

a.    the failure to obtain the Final Order on or within thirty-five (35) days after the Petition Date;

b.    the failure to, within forty-five (45) days after the Petition Date (i) obtain one or more letters of intent from proposed purchasers or plan sponsors and (ii)(A) file a sale motion establishing a bid process consistent with milestones set forth below or (B) file a chapter

11 plan and disclosure statement reasonably acceptable to the Prepetition Lender requiring payment in full in cash of the Prepetition Loan Obligations on the effective date of such chapter 11 plan.  In the event the Debtor satisfies the foregoing condition pursuant to clause (ii)(B) of this paragraph, the milestones set forth below with respect to a sale shall cease to apply; <u>provided</u> that the Debtor must obtain funding for any costs incurred beyond the date that is eighty-eight (88) days after the Petition Date from a plan sponsor or other third-party source of financing, with such financing either paying the Prepetition Lender in full or junior to the liens, interests and rights of the Prepetition Lender (the "**<u>Plan Financing</u>**").  For the avoidance of doubt, unless otherwise agreed by the Prepetition Lender, the Debtor shall not be permitted to use Cash Collateral under this Interim Order in excess of the Aggregate Budged Expenditure Limit to fund a chapter 11 process beyond the milestone provided in paragraph 6.f. below;

        c.     subject to paragraph 6.b., (1) the failure for a bid deadline to occur for the Debtor's assets pursuant to bid procedures requiring customary non-refundable deposits equal to 10% of the proposed Purchase Price on or within seventy-five (75) days after the Petition Date, or (2) the failure to obtain a commitment from a plan sponsor or other third-party source of financing on or within seventy-five (75) days after the Petition Date, to provide the Plan Financing;

        d.     subject to paragraph 6.b., the failure to hold an auction (if more than one qualified bidder) on or before eighty (80) days after the Petition Date;

        e.     subject to paragraph 6.b., (1) the failure to obtain approval of a sale of all or substantially all assets of the Debtor pursuant to section 363 of the Bankruptcy Code on or within eighty-five (85) days after the Petition Date, or (2) the failure to obtain approval of Plan Financing pursuant to section 363 of the Bankruptcy Code on or within eighty-five (85) days

after the Petition Date;

f.        subject to paragraph 6.b., (1) the failure to close a sale of substantially all assets of the Debtor and pay Prepetition lender in full in immediately available funds within eighty-eight (88) days after the Petition Date, or (2) the failure to close the Plan Financing within eighty-eight (88) days after the Petition Date;

g.        the Debtor's failure to comply with the Budget, subject to Permitted Variance;

h.        reversal, vacatur, or modification (without consent of the Prepetition Lender) of this Interim Order;

i.        the entry by the Court of an order, or the filing by the Debtor of a motion which seeks entry of an order, (i) dismissing the chapter 11 case, (ii) converting any the chapter 11 case to a case under chapter 7 of the Bankruptcy Code, (iii) appointing a trustee or examiner with the expanded powers to operate the Debtor's business pursuant to section 1104 of the Bankruptcy Code in the chapter 11 case or (iv) terminating or reducing the period pursuant to section 1121 of the Bankruptcy Code during which the Debtor has the exclusive right to file a plan of reorganization and solicit acceptances thereof;

j.        the Debtor files or supports a motion challenging the validity, extent or priority of any of the Prepetition Loan Obligations or the Prepetition Liens;

k.        the entry by the Court of an order that impairs in any way the security interests, liens, priority claims or rights granted to the Prepetition Lender under the terms of this Interim Order or, except as expressly provided herein, grants any lien on, or security interest in, any Prepetition Collateral in favor of any party other than the Prepetition Lender, or granting an administrative claim payable by the Debtor to any party other than the Prepetition Lender that is

senior to, or *pari passu* with, the Adequate Protection Superpriority Claim, without the express written consent of the Prepetition Lender; and

l.      any material breach by the Debtor of any other obligations, representations, warranties or covenants in the Interim Order, which material breach is not cured on or within five (5) business days after written notice of such breach is given to the Debtor.

7.      <u>Remedies upon Termination of Authorization to Use Cash Collateral</u>.  The Debtor shall immediately provide notice to the Prepetition Lender (with a copy to counsel for the Creditors' Committee (if any)), of the occurrence of any Termination Event, at which time, following the Notice Period (as defined below), the Debtor's ability to use Prepetition Collateral, including Cash Collateral, shall automatically terminate, subject to the Carve-Out and the KEIP/KERP Amount.  Notwithstanding the foregoing, upon the occurrence of an Termination Event and following the Prepetition Lender giving of not less than five (5) business days' advance written notice (the "**Enforcement Notice**") to counsel to the Debtor and counsel to the Creditors' Committee (if any) (the "**Notice Period**"), unless the Court orders otherwise, the Debtor's right to use Cash Collateral shall automatically terminate (unless otherwise agreed by the Prepetition Lender) and the Prepetition Lender may exercise any remedies available to it under this Interim Order, the Prepetition Credit Documents and applicable non-bankruptcy law (subject to the provisions hereof with respect to the Carve-Out and KEIP/KERP Amount). Unless the Court orders otherwise, the automatic stay pursuant to section 362 of the Bankruptcy Code shall be automatically terminated at the end of the Notice Period, without further notice or order of the Court, unless the Prepetition Lender elects otherwise in a written notice to the Debtor, and the Prepetition Lender shall be permitted, subject to the Carve-Out and the KEIP/KERP Amount, to exercise all rights and remedies, including with respect to the

Prepetition Collateral (including, without limitation, any Cash Collateral) and the collateral securing the Adequate Protection Liens, set forth in this Interim Order and the Prepetition Credit Documents, and as otherwise available at law without further order or application or motion to the Court, and without restriction or restraint by any stay under section 362 or 105 of the Bankruptcy Code or otherwise.  The delay or failure of the Prepetition Lender to exercise rights and remedies under this Interim Order, the Prepetition Credit Documents or applicable law shall not constitute a waiver of its rights thereunder or otherwise.

8.    <u>Limitation on Use of Collateral</u>.  Notwithstanding anything to the contrary set forth in this Interim Order, no Prepetition Collateral, including Cash Collateral, may be used: (i) to investigate (except as expressly provided herein), initiate, prosecute, join, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, or other litigation of any type (A) against the Prepetition Lender (in its capacity as such) or seeking relief that would impair the rights and remedies of the Prepetition Lender (in its capacity as such) under the Prepetition Credit Documents or this Interim Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor or any Creditors' Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration, or similar relief that would impair the ability of any of the Prepetition Lender to recover on the Prepetition Loan Obligations or seeking affirmative relief against the Prepetition Lender related to the Prepetition Loan Obligations; (B) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Prepetition Loan Obligations or the Prepetition Lender's liens or security interests in the

Prepetition Collateral; or (C) for monetary, injunctive, or other affirmative relief against the Prepetition Lender, or its liens on or security interests in the Prepetition Collateral that would impair the ability of the Prepetition Lender to assert or enforce any lien, claim, right, or security interest or to realize or recover on the Prepetition Loan Obligations; (ii) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition Liens) held by or on behalf of the Prepetition Lender related to the Prepetition Loan Obligations; (iii) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions related to the Prepetition Loan Obligations or the Prepetition Liens; or (iv) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Term Loan Liens or any other rights or interests of the Prepetition Lender related to the Prepetition Loan Obligations or the Prepetition Liens; *provided*, *that*, no more than $25,000 of the proceeds of the Prepetition Collateral, including the Cash Collateral, may be used by the Creditors' Committee, if appointed, solely to investigate the foregoing matters within the Challenge Period (as defined herein).

9.      Effect of Debtor's Stipulations on Third Parties.

a.      The Debtor's Stipulations set forth in this Interim Order shall be binding on the Debtor, its estate and its respective representatives, successors, and assigns.  The acknowledgments, stipulations, and admissions contained in this Interim Order shall also be binding upon all other parties in interest, including the Creditors' Committee, if any, or any chapter 7 or chapter 11 trustee appointed or elected for the Debtor, unless (a) such party, in each case, with requisite standing, has duly filed an adversary proceeding challenging the validity, perfection, priority, extent or enforceability of the Prepetition Liens or the Prepetition Loan

Obligations or otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Claims and Defenses**") against the Prepetition Lender in connection with any matter related to the Prepetition Collateral or Prepetition Loan Obligations by no later (i) with respect to any Creditors' Committee, the date that is sixty (60) days after the Creditors' Committee's formation or (ii) with respect to other parties in interest, no later than the date that is seventy-five (75) days after entry of this Interim Order (the time period established by the later of the foregoing clauses (i) and (ii), the "**Challenge Period**"); *provided*, *however*, that in the event that, prior to the expiration of the Challenge Period, (x) the chapter 11 case is converted to chapter 7 or (y) a chapter 11 trustee is appointed in the chapter 11 case, then, in each such case, the Challenge Period shall be extended for a period of sixty (60) days solely with respect to any chapter 7 or chapter 11 trustee appointed or elected for the Debtor, commencing on the occurrence of either of the events described in the foregoing (x) and (y); and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding. If no such adversary proceeding is timely filed prior to the expiration of the Challenge Period, without further order of this Court, (x) the obligations under the Prepetition Credit Documents shall constitute allowed claims, not subject to any Claims and Defenses (whether characterized as a counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by section 101(5)) of the Bankruptcy Code, impairment, subordination (whether equitable, contractual or otherwise), or other challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law), for all purposes in this chapter 11 case and any

subsequent chapter 7 case, if any; and (y) the Prepetition Loan Obligations, the Prepetition Liens on the Prepetition Collateral and the Prepetition Lender (in its capacity as such) shall not be subject to any other or further challenge and any party in interest shall be forever enjoined and barred from seeking to exercise the rights of the Debtor's estate or taking any such action, including any successor thereto (including any estate representative or any chapter 7 or chapter 11 trustee appointed or elected for the Debtor, whether such trustee is appointed or elected prior to or following the expiration of the Challenge Period).  If any such adversary proceeding is timely filed prior to the expiration of the Challenge Period, (a) the stipulations and admissions contained in this Interim Order shall nonetheless remain binding and preclusive on the Creditors' Committee, if any, and any other party in this chapter 11 case, including any chapter 7 or chapter 11 trustee appointed or elected for the Debtor, except as to any stipulations or admissions are specifically and expressly challenged in such adversary proceeding and (b) any Claims and Defenses not brought in such adversary proceeding shall be forever barred; *provided* that if and to the extent any challenges to a particular stipulation or admission are withdrawn, denied or overruled by a final non-appealable order, such stipulation also shall be binding on the Debtor's estate and all parties in interest.

b.    Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Creditors' Committee, standing or authority to pursue any cause of action belonging to the Debtor or its estate, including, without limitation, any Challenge with respect to the Prepetition Credit Documents or the Prepetition Loan Obligations.

10.    <u>Reversal, Modification, Vacatur, or Stay</u>.  Any reversal, modification, vacatur, or stay of any or all of the provisions of this Interim Order (other than in accordance with the Final Order) shall not affect the validity or enforceability of any Adequate Protection

Lien, or any claim, lien, security interest, or priority authorized or created hereby with respect to any Adequate Protection Lien, incurred prior to the effective date of such reversal, modification, vacatur, or stay. Notwithstanding any reversal, modification, vacatur, or stay (other than in accordance with the Final Order), (a) this Interim Order shall govern, in all respects, any use of Cash Collateral or Adequate Protection Lien or Adequate Protection Superpriority Claim incurred by the Debtor prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the Prepetition Lender shall be entitled to all the benefits and protections granted by this Interim Order with respect to any such use of Cash Collateral or such Adequate Protection Lien or Adequate Protection Superpriority Claim incurred by the Debtor.

11.     <u>Limitation on Charging Expenses Against Collateral</u>. Subject to and effective upon entry of the Final Order, no expenses of administration of the chapter 11 case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or the collateral securing the Adequate Protection Liens (except to the extent of the Carve-Out and the KEIP/KERP Amount), the Prepetition Lender pursuant to sections 105(a), 506(c) or 552(b) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the Prepetition Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the Prepetition Lender.

12.     <u>Reservation of Rights of the Prepetition Lender</u>.   Notwithstanding any other provision in this Interim Order to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of any of the Prepetition Lender to seek any other or supplemental relief in respect of the Debtor including the right to seek additional adequate protection at the Final

Hearing; (b) any of the rights of any of the Prepetition Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the Prepetition Lender to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of either of the chapter 11 case, conversion of the chapter 11 case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in the chapter 11 case, (iii) seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, or (iv) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Lender.

13.    _No Waiver for Failure to Seek Relief_.    The failure or delay of the Prepetition Lender to seek relief or otherwise exercise any of its rights and remedies under this Interim Order, the Prepetition Credit Documents, or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the Prepetition Lender.

14.    _Section 507(b) Reservation_.    Subject to the Carve-Out and the KEIP/KERP Amount, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided the Prepetition Lender hereunder is insufficient to compensate for any Diminution in Value of its interests in the Prepetition Collateral during this chapter 11 case.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Prepetition Lender, that the adequate protection granted herein does in fact adequately protect the Prepetition Lender against any Diminution in Value of its interests in the Prepetition Collateral (including the Cash Collateral).

15.    _Modification of the Automatic Stay_.    The Debtor is authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the

transactions contemplated hereby. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtor and the Prepetition Lender to accomplish the transactions contemplated by this Interim Order.

16.    <u>Asset Sales</u>. Subject to and effective upon entry of the Final Order, and subject to the Carve-Out and the KEIP/KERP Amount, unless otherwise agreed among the Debtor, the Prepetition Lender in writing, all cash proceeds (including, without limitation, any funds released from escrow, received in connection with a working capital adjustment or otherwise) of any sales and other dispositions (including casualty and condemnation events) of Prepetition Collateral ("**<u>Asset Sales</u>**") shall be distributed to the Prepetition Lender as and when received by the Debtor to repay the Prepetition Lender in full accordance with the terms of the Prepetition Credit Documents.

17.    <u>Perfection of Adequate Protection Liens</u>.

a.    The Prepetition Lender is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder. Whether or not the Prepetition Lender shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Interim Order. If the Prepetition Lender determines to file or execute any financing statements, agreements, notice of liens or similar instruments, the Debtor shall cooperate and assist in any such execution and/or filings as reasonably requested by the Prepetition Lender, and the automatic stay shall be modified to

allow such filings.

b.      A certified copy of this Interim Order may, in the discretion of the

Prepetition Lender, be filed with or recorded in filing or recording offices in addition to or in lieu

of such financing statements, mortgages, notices of lien or similar instruments, and all filing

offices are hereby authorized to accept such certified copy of this Interim Order for filing and

recording; *provided* that, notwithstanding the date of any such filing, the date of such perfection

shall be the date of entry of this Interim Order.

c.      Effective upon entry of the Final Order, any provision of any lease or

other license, contract or other agreement that requires (i) the consent or approval of one or more

landlords or other parties or (ii) the payment of any fees or obligations to any governmental

entity, in order for the Debtor to pledge, grant, sell, assign, or otherwise transfer any such

leasehold interest, or the proceeds thereof, or other collateral related thereto, is hereby deemed to

be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall

have no force and effect with respect to the granting of Adequate Protection Liens on such

leasehold interest or the proceeds of any assignment and/or sale thereof by the Debtor in

accordance with the terms of the Prepetition Credit Documents or this Interim Order.

18.    <u>Payments Free and Clear</u>.   All payments or proceeds remitted to the

Prepetition Lender pursuant to the provisions of this Interim Order or any subsequent order of

the Court shall be irrevocable and indefeasible, received free and clear of any claim, charge,

assessment or other liability, including, without limitation, subject to entry of the Final Order,

any such claim or charge arising out of or based on, directly or indirectly, sections 506(c)

(whether asserted or assessed by, through or on behalf of the Debtor) or 552(b) of the

Bankruptcy Code.

19.    <u>Equities of the Case</u>.    Subject to and effective upon entry of the Final Order, the Prepetition Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Lender with respect to (a) proceeds, products, offspring or profits of any of the Prepetition Collateral or the collateral securing the Adequate Protection Liens or (b) the extension of the Adequate Protection Liens to cover proceeds of the collateral securing the Adequate Protection Liens.

20.    <u>No Marshalling/Application of Proceeds</u>.    Subject to and effective upon entry of the Final Order, the Prepetition Lender shall be entitled to apply the payments or proceeds of the Prepetition Collateral in accordance with the provisions of the Prepetition Credit Documents, and in no event shall the Prepetition Lender be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral.

21.    <u>Preservation of Rights Granted under this Interim Order</u>.

a.    The Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code.

b.    Notwithstanding any order dismissing the chapter 11 case under section 1112 of the Bankruptcy Code or otherwise entered at any time, (x) the Adequate Protection Superpriority Claims, the other administrative claims granted pursuant to this Interim Order and the Adequate Protection Liens shall continue in full force and effect and, except as agreed to in writing by the Prepetition Lender, shall maintain its priorities as provided in this Interim Order until all adequate protection obligations shall have been paid and satisfied in full in cash (and such Adequate Protection Superpriority Claims, the other administrative claims granted pursuant

to this Interim Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

        c.      Except as expressly provided in this Interim Order, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, the other administrative claims granted pursuant to this Interim Order and all other rights and remedies of the Prepetition Lender granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting either of the chapter 11 case to a case under chapter 7, dismissing the chapter 11 case or by any other act or omission, (ii) the entry of an order approving the sale of any Prepetition Collateral or the collateral securing the Adequate Protection Liens pursuant to section 363(b) of the Bankruptcy Code or (iii) the entry of an order confirming a plan of reorganization in the chapter 11 case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining adequate protection obligations. The terms and provisions of this Interim Order shall continue in the chapter 11 case or in any superseding chapter 7 case under the Bankruptcy Code. The Adequate Protection Liens, the Adequate Protection Superpriority Claims, the other administrative claims granted pursuant to this Interim Order and all other rights and remedies of the Prepetition Lender granted by the provisions of this Interim Order shall continue in full force and effect until all adequate protection obligations are indefeasibly paid in full, in cash.

        22.      <u>Proofs of Claim</u>. The Prepetition Lender shall not be required to file a proof of claim in the chapter 11 case or a successor case in respect of the Prepetition Loan Obligations, and the Debtor's Stipulations in paragraph A herein shall be deemed to constitute a

timely filed proof of claim against the Debtor. Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in this chapter 11 case or a successor case shall not apply to the Prepetition Lender with respect to the Prepetition Loan Obligations. Notwithstanding the foregoing, the Prepetition Lender is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim for any claims arising from the applicable Prepetition Credit Documents.

23. _Credit Bidding_. Subject to and effective upon entry of the Final Order, the Prepetition Lender shall have the right to credit bid, up to the full amount of its secured claim in any sale of the Prepetition Collateral or the collateral securing the Adequate Protection Liens as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through sections 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

24. _Insurance_. At all times the Debtor shall maintain casualty and loss insurance coverage for the Prepetition Collateral on substantially the same basis as maintained prior to the Petition Date.

25. _Findings of Fact and Conclusions of Law_. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable _nunc pro tunc_ to the Petition Date immediately upon the entry thereof. To the extent that any findings of fact are determined to be conclusions of law, such findings of fact shall be adopted as such; and to the extent that any conclusions of law are determined to be findings of fact, such conclusions of law shall be adopted as such.

26.     <u>Final Hearing</u>.  A hearing to consider entry of an order granting the relief requested in the Motion on a final basis shall be held on **October 15, 2019, at 11:30 a.m. (Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with this Court, and served upon (a) the proposed attorneys for the Debtor, (i) Latham & Watkins LLP, 355 South Grand Avenue, Suite 100, Los Angeles, California 90071 (Attn:  Peter M. Gilhuly and Ted A. Dillman), and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn:   Michael R. Nestor and Kara Hammond Coyle); (b) the Office of the United States Trustee for the District of Delaware, 844 N. King Street, Wilmington, Delaware 19801 (Attn:   Linda Richenderfer); and (c) counsel to the Prepetition Lender, Sheppard, Mullin, Richter & Hampton LLP, Four Embarcadero Center, 17th Floor, San Francisco, CA 94111 (Attn:  Ori Katz) so as to be received by no later than **4:00 p.m. (Eastern Time) on October 8, 2019**.

27.     <u>Order Effective Upon Entry</u>.  The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.  The terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

28.     <u>Notice of Interim Order</u>.  The Debtor is directed to immediately serve a copy of this Interim Order by first class mail, postage prepaid, on counsel for the Prepetition Lender, the Debtor's 20 largest unsecured creditors, and the United States Trustee, which service shall constitute adequate and proper notice of the Final Hearing.

29.     <u>Retention of Jurisdiction</u>.  This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

30.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

31.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

32.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

**Dated: September 18th, 2019**
**Wilmington, Delaware**

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**