# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| SIENNA BIOPHARMACEUTICALS, INC., | Case No. 19-12051 (MFW) |
| Debtor. | **Hearing Date: February 10, 2021 at 2:00 p.m. (ET)**<br>**Objection Deadline: February 3, 2021 at 4:00 p.m. (ET)** |

**DECLARATION OF JEOFFREY L. BURTCH, CHAPTER 7 TRUSTEE, IN SUPPORT OF MOTION FOR ENTRY OF ORDER APPROVING SALE OF <u>ASSETS TO AVRO LIFE SCIENCES, INC.</u>**

Jeoffrey L. Burtch, Chapter 7 trustee (the "<u>Trustee</u>") for the estate of the above-captioned debtor (the "<u>Debtor</u>"), declares pursuant to 28 U.S.C. § 1746, the following in support of the *Trustee's Motion for Entry of Order Approving Sale of Assets to Avro Life Sciences, Inc.* [D.I. 346] (the "<u>Motion</u>").[1]

1. On September 16, 2019 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code [D.I. 1].

2. On October 22, 2019, the Debtor filed a *Motion of Debtor for Entry of Order (I)(A) Establishing Bidding Procedures, Assumption and Assignment Procedures, and Stalking Horse Procedures for Sale of Substantially All Assets, (B) Scheduling Auction and Sale Hearing, and (C) Approving Form and Manner of Notice Thereof, (II) Approving Sale of Substantially All Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 142] (the "<u>Chapter 11 Sale Motion</u>").

3. According to the Chapter 11 Sale Motion, the Debtor sought, among other things, approval of procedures by which it would sell "substantially all of the Debtor's assets

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

(collectively, the '**Assets**') or any portion thereof." (*Chapter 11 Sale Motion*, ¶ 1(a)(1)). As hereafter set forth, the assets that I now seek authorization to sell to Avro were part of the Assets which the Debtor previously marketed prior to the filing of this case and while in chapter 11, but was unable to sell.

    4.    In the Chapter 11 Sale Motion, the Debtor summarized its proposed marketing of its Assets, as follows:

> 6. The Debtor seeks to maximize the value of its estate for the benefit of all stakeholders by conducting an Auction for the sale of its Assets. The Debtor intends to solicit bids for the Auction from parties in interest in acquiring either substantially all of its Assets or certain specified Assets on an individual basis. This includes a sale of the stock of the Debtor's non-debtor subsidiary Creabilis Holdings Limited, which in turn owns Sienna Biopharmaceuticals S.A. (which, as discussed in greater detail in the First Day Declaration, holds certain intellectual property of the Debtor related to SNA-120), or the assets of the non-debtor subsidiaries, which, for the avoidance of doubt, will not be sold subject to section 363 of the Bankruptcy Code, but are available to be sold. The Debtor will continue to work with its investment banker, Cowen and Company, LLC ("**Cowen**"), to identify potential sponsors interested in facilitating a plan process, to ensure the highest and best recovery for all stakeholders.
>
> 7. As set forth in greater detail in the First Day Declaration, before the commencement of this chapter 11 case, the Debtor engaged Cowen to assist in analyzing and considering the Debtor's financial alternatives and strategies. Following a review of the available options, the Debtor directed Cowen to commence a process and pursue a potential transaction for the Debtor. Accordingly, before the Petition Date, Cowen engaged in communications with a number of parties regarding a potential transaction with the Debtor and such efforts remain ongoing.
>
> 8. Based on communications between Cowen and interested parties, the Debtor is optimistic that it will receive competitive bids for certain Assets at the Auction. The Debtor is seeking the relief requested in this Motion to ensure that it has the necessary flexibility to run a value-maximizing sale process for the benefit of all stakeholders, while also complying with the conditions and milestones governing its continued use of cash collateral.

D.I. 142.

5. On November 13, 2019, the Court entered an *Order (I)(A) Establishing Bidding Procedures, Assumption and Assignment Procedures, and Stalking Horse Procedures for Sale of Substantially All Assets, (B) Scheduling Auction and Sale Hearing, and (C) Approving Form and Manner of Notice Thereof, (II) Approving Sale of Substantially All Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief)* [D.I. 205] (the "Bidding Procedures Order").

6. Paragraph C of the Bidding Procedures Order contained the finding that "[t]he Debtor's proposed notices of (a) a Sale, (b) the assumption and assignment of, and Cure Amounts for, the Contracts to be assumed and assigned to any Successful Bidder, (c) the Auction, (d) the Bid Deadline, (e) the Successful Bidder, and (f) the Bidding Procedures are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of each, and no further notice of, or hearing on, each is necessary or required."

7. Paragraph D of the Bidding Procedures Order contained this Court's finding that "[t]he Bidding Procedures … are fair, reasonable, and represent the best method for maximizing the value of the Debtor's estate in connection with a Sale."

8. On December 5, 2019, the Debtor filed a *Notice of Successful Bidder* [D.I. 240] in which it notified the Court that it held an auction in accordance with the Bidding Procedures Order on December 5, 2019, and identified Sebacia, Inc. as the successful bidder for "the Topical Photoparticle Therapy™ assets, a/k/a SNA 001" The notice further stated that the Debtor "has not received bids for, and does not plan to seek approval of a sale of, its other assets at the Sale Hearing."

9. On December 10, 2019, the Court entered an *Order (A) Authorizing and*

*Approving (1) the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (2) the Assumption and Assignment to Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (B) Granting Related Relief* [D.I. 247] (the "Chapter 11 Sale Order").

10. In paragraph N of the Chapter 11 Sale Order, the Court made the finding that "[t]he Debtor conducted an auction process in accordance with, and has otherwise complied in all material respects with, the Bidding Procedures Order, and accordingly has afforded a full, fair, and reasonable opportunity for any Person or entity to make a higher or otherwise better offer to purchase the Purchased Assets."

11. On December 13, 2019, the Debtor filed a motion to convert its case to a case under Chapter 7 of the Bankruptcy Code. [D.I. 254]. As the motion to convert noted, the "Debtor ha[d] not received any bids for the Topical by Design™ assets, a/k/a SNA 120 and SNA 125, or its other assets." *Id.* at ¶ 9. On December 18, 2019, the Court entered an order converting the case to a case under Chapter 7. D.I. 266.

12. On or about December 18, 2019, I was appointed as interim trustee pursuant to Section 701 of the Bankruptcy Code, and now serve pursuant to Section 702(d).

13. Shortly after my appointment, I caused my counsel to send out communications to all entities expressing interest in the Debtor's assets during the Chapter 11 sale process (collectively, the "Chapter 11 Sale Process Parties"), informing such entities of the conversion to Chapter 7 and my desire to liquidate the Estate's remaining assets (the "Post-Conversion Canvassing"). During this informal process, no offers to purchase the remaining assets materialized.

14. Recently, Avro Life Sciences, Inc. ("Avro") reached out to my counsel, inquiring

as to the status of any remaining assets. Several rounds of negotiation later, Avro presented an offer to me to purchase certain Estate assets (the "Remaining Assets") on an "as-is, where-is" basis, for a purchase price of $100,000 (the "Purchase Price"). Based upon (i) the Debtor's prior inability to sell the Assets following a fulsome marketing process by the Debtor and its investment banker, Cowen, and (ii) the lack of interest during the Post-Conversion Canvassing, I have determined that the Purchase Price is fair and reasonable.

15. After arm's length negotiations, and in the exercise of my reasonable business judgment, I agreed to accept Avro's offer to purchase certain of the Remaining Assets (the "Purchased Assets") as identified in the term sheet attached to the Motion as Exhibit "A", subject to Court approval (the "Sale"). As noted on the Term Sheet at Exhibit A to the Motion, subsequent to filing the Motion, I negotiated and entered into an asset purchase agreement memorializing the agreements on the Term Sheet (the "APA"). I caused the APA to be filed on January 29, 2021 [D.I. 351]. I further negotiated a sharing of the net proceeds of the Sale with Silicon Valley Bank ("SVB"), which has asserted security interests in and liens against the Remaining Assets. On January 29, 2021, I caused a *Supplement to Trustee's Motion for Entry of Order Approving Sale of Assets to Avro Life Sciences, Inc.,* which set forth the agreement with SVB, to be filed on the docket [D.I. 350]. In accordance with the Term Sheet and APA, Avro has wired a deposit in the amount of 10% of the Purchase Price.

16. I respectfully submit that the Sale represents a prudent and proper exercise of my business judgment. The terms of the Sale, including the Purchase Price, are reasonable, and the result of good faith, arms-length negotiations between Avro and me, through my counsel. Moreover, the Purchase Price received by the Estate represents a positive recovery for the Estate.

17. Based on the foregoing, I believe that the value to be realized by the Estate is fair

and appropriate under the circumstances, and represents a benefit to the Estate. Therefore, I respectfully submit that the Sale serves the Estate's best interests and represents a sound exercise of my business judgment for purposes of section 363(b) of the Bankruptcy Code.

## Lack of Additional Offers

18. Although I agreed with Avro not to affirmatively market the Purchased Assets, notice of the Motion was provided to the Chapter 11 Sale Process Parties. As I stated in the Motion, as an additional test of the fairness of the proposed Sale, I would consider additional proposals for the Purchased Assets through the date by which objections are due to this Motion. Objections to the Motion were due on or before February 3, 2021 at 4:00 p.m. No objections or competing offers were received by me or my counsel for the Purchased Assets.

19. Since the Post-Conversion Canvassing did not reveal any interest in the Remaining Assets and the Estate otherwise lacked sufficient resources to monitor and maintain the Debtor's worldwide intellectual property portfolio, I have neither monitored, nor sought to protect, any intellectual property rights that the Debtor may have had with respect to the Remaining Assets (collectively, the "IP Rights"). Avro is aware of that fact, and has agreed to the sale without representations or warranties of any kind. Further, Avro has undertaken its own review of what steps may need to be undertaken to protect IP Rights prior to the closing on the sale transaction (the "Closing"). Subject to first obtaining my written consent, Avro has agreed to pay any costs, fees, or other monetary obligations ("IP Preservation Costs") that may be required in order to protect or preserve the IP Rights prior to Closing. Avro is receiving no adjustment in the Purchase Price for any IP Preservation Costs it pays.

20. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: February 4, 2021

/s/ Jeoffrey L. Burtch
―――――――――――――――――――
Jeoffrey L. Burtch, as Chapter 7 Trustee
for Sienna Biopharmaceuticals, Inc.