## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| SIENNA BIOPHARMACEUTICALS, INC., | : | Case No. 19-12051 (MFW) |
| | : | |
| Debtor.[1] | : | **Objection Deadline: February 16, 2022 at 4:00 p.m.** |
| | : | **Hearing Date:  February 23, 2022 at 2:00 p.m.** |

## MOTION OF CHAPTER 7 TRUSTEE FOR AN ORDER APPROVING SETTLEMENT AGREEMENT WITH CERTAIN OF THE DEBTOR'S FORMER EXECUTIVES PURSUANT TO FED. R. BANKR. P. 9019

Jeoffrey L. Burtch, the chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of the above-captioned debtor (the "Debtor"), hereby files this motion (the "Motion") pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"), seeking an order approving a settlement agreement and release by and between the (a) Trustee and (b) Frederick C. Beddingfield, III; Kristina Burow; Dennis M. Fenton; Todd Harris; James M. Hindman; Keith R. Leonard, Jr.; Robert More; Timothy K. Andrews; Paul Lizzul; and Alexander Azoy (each an "Executive" and collectively the "Executives"), a copy of which is attached hereto, incorporated herein and marked as Exhibit "A" (the "Settlement Agreement"), and authorizing the Trustee to take any and all actions as may be necessary and appropriate to implement the provisions of the Settlement Agreement.  In support of the Motion, the Trustee respectfully avers as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 4627. The Debtor's mailing address is 30699 Russell Ranch Road, Suite 140, Westlake Village, California 91362.

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are Section 105(a) of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules.

**BACKGROUND**

4. On September 16, 2019, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Case").

5. On December 5, 2019, the Debtor held an auction for the sale of certain of its assets. That same day, the Debtor filed a Notice of Successful Bidder identifying Sebacia, Inc. as the successful bidder on certain of the Debtor's assets. D.I. 241. On December 10, 2019, the Court held a hearing to approve the sale, and subsequently entered the *Order (A) Authorizing and Approving (1) Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, and (2) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (B) Granting Related Relief*. D.I. 247.

6. On December 13, 2019, the Debtor filed a motion to convert its Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code. D.I. 254. On December 18, 2019, the Court entered an order converting the Bankruptcy Case to a case under Chapter 7. D.I. 266.

7. On or about December 18, 2019, Jeoffrey L. Burtch was appointed as interim trustee pursuant to Section 701 of the Bankruptcy Code. The Trustee now serves pursuant to Section 702(d).

8. The Executives are former officers, directors, managers and/or control persons of the Debtor.

9. The Trustee has the power, authority, and standing to, among other things, prosecute, compromise, or otherwise resolve, any and all claims of the Estate against the Debtor's former individual officers, directors, employees, managers and/or control persons, whether by way of claim, counterclaim, cross-claim, lawsuit, adversary proceeding, bankruptcy proceeding or filing, or other proceeding in law, equity, or otherwise, including without limitation all claims asserted or that could have been asserted by the Trustee against the Executives, or any one of them, in the draft Complaint provided to the Executives (the "Claims").

10. Prior to the Petition Date, Houston Casualty Company ("HCC") issued a Directors, Officers and Corporate Liability Insurance Policy, Policy No. 24-MG-19-A14355, as well as similar predecessor policies (collectively, the "Policy") to the Debtor. The following additional insurance carriers (collectively, with HCC, the "Insurers") issued excess coverage for the Policy:

| INSURANCE CARRIER | POLICY NUMBER |
| --- | --- |
| Continental Casualty Company | 596813028 |
| XL Specialty Insurance Company | ELU162893-19 |
| Endurance Risk Solutions Assurance Co. | DOX10011536402 |
| Old Republic Insurance Co | ORPRO 42935 |
| AXIS INSURANCE COMPANY | MSN624589/C1/2019 |
| National Union Fire Insurance Company of Pittsburgh, | 01-602-33-93 |

| | |
|---|---|
| Pa. | |
| Qbe Insurance Corporation | QPL1346379 |

11. The Trustee's investigation of the Claims has included a review of voluminous documents from the Debtor and third parties. The Trustee opened a dialogue with counsel for the Executives and suggested that the parties attempt to resolve the claims through a pre-litigation mediation process. The Executives agreed and a tolling agreement was entered into which tolled all statutes of limitations and repose through January 14, 2022 (which has been further tolled an additional 90 days so that the parties can seek Court approval of the Settlement Agreement).

12. The Trustee and the Executives participated in voluntary mediation with respect to the Claims on November 18, 2021, with Jed Melnick of JAMS serving as mediator (the "Mediator").

13. With the assistance of the Mediator, the Trustee and the Executives have agreed to settle and resolve the Claims on the terms and conditions set forth in the Settlement Agreement. The Settlement Agreement is the product of careful, good faith negotiation between the Trustee and the Executives.

**RELIEF REQUESTED**

14. By this Motion, the Trustee respectfully seeks an order of this Court approving the attached Settlement Agreement, authorizing the Trustee to take any and all actions as may be necessary and appropriate to implement the terms and provisions of the Settlement Agreement, and providing that the Court retain jurisdiction to enforce the Settlement Agreement.

15. The complete terms and conditions of the Trustee's settlement with the Executives are more fully set forth in the Settlement Agreement, which should be read in its entirety. Key provisions of the Settlement Agreement include, *inter alia*, the following[2]:

a. <u>Settlement Payment</u>. Within fifteen (15) business days from the later of the Effective Date (as defined in the Settlement Agreement) or HCC's receipt of a fully completed Form W-9 and Wire Transfer/ACH Credit Authorization Form (as provided to the Trustee), the Executives shall cause the payment to the Trustee of One Million, Two Hundred Fifty Thousand Dollars ($1,250,000.00) (U.S.) (the "<u>Settlement Payment</u>") by wire transfer to an account to be designated by the Trustee prior to the Effective Date, in full and final settlement of all claims against the Executives or any of them as set forth in Paragraph 2 of the Settlement Agreement.  *See* Settlement Agreement, § 1.

b. <u>Releases</u>.

   i. In consideration for the mutual obligations contained herein, upon the Trustee's indefeasible receipt of the Settlement Payment in good funds (the "<u>Settlement Payment Date</u>"), the Trustee, on behalf of himself (but solely in his capacity as Trustee of the Estate), the Debtor, the Estate, and his and its successors and assigns (collectively, the "<u>Estate Releasors</u>"), hereby releases and forever discharges to the fullest extent permitted by law, (i) each of the Executives and Insurers, and their respective heirs, beneficiaries, personal representatives, executors and assigns, and their predecessors, successors, assigns, present and former affiliates and subsidiaries, directors, officers, employees, agents and managers (collectively, the "<u>Settling D&O Releasees</u>") from any and all debts, claims, suits, demands, liabilities, damages and consequential damages, actions or causes of action of whatsoever nature and kind, whether known or unknown, suspected or unsuspected, asserted or unasserted, arising at law or in equity, fixed or contingent, liquid or unliquidated, arising from acts, omissions or events that have occurred from the beginning of the world through the Effective Date, including without limitation, the Claims, claims arising under Chapter 5 of the United States Bankruptcy Code, claims for indemnification and contribution and any claims which have been or may be asserted in the Debtor's bankruptcy case, and (ii) each and every person and entity (including, without limitation, persons and entities not parties to this Agreement) who is an "Insured" within the meaning of the Policy and the Insurers, and their respective heirs, beneficiaries, personal representatives, executors and assigns, and their predecessors, successors, assigns, present and former affiliates and subsidiaries, directors, officers, employees, agents and managers (collectively, the "<u>Insured Releasees</u>"), from any and all debts, claims, suits, demands, liabilities, damages and

---

[2] To the extent the settlement terms referenced in the Motion are inconsistent with the provisions of the Settlement Agreement, the provisions of the Settlement Agreement shall control.

consequential damages, actions or causes of action of whatsoever nature and kind, whether known or unknown, suspected or unsuspected, asserted or unasserted, arising at law or in equity, fixed or contingent, liquidated or unliquidated, arising from acts, omissions or events that have occurred from the beginning of the world through the Effective Date, but only to the extent any of the foregoing in this subsection (ii) (a) is a "Loss" as defined in the Policy, and/or (b) would give rise to claims by any such Insured Releasee against any Settling D&O Releasee; provided, however, the Estate Releasors do not release any claim arising under this Agreement, including any claim for breach of this Agreement, and provided further, however, the Estate Releasors do not waive any legal or equitable defense to the Surviving Claims. *See* Settlement Agreement, §2a.

    ii.    In consideration for the mutual obligations contained herein, upon the Settlement Payment Date, each of the Settling D&O Releasees hereby releases and forever discharges to the fullest extent permitted by law, each of the Estate Releasors from any and all debts, claims, suits, demands, liabilities, damages and consequential damages, actions or causes of action of whatsoever nature and kind, whether known or unknown, suspected or unsuspected, asserted or unasserted, arising at law or in equity, fixed or contingent, liquid or unliquidated, arising from acts, omissions or events that have occurred from the beginning of the world through the Effective Date, including without limitation, any claims in connection with the assertion of the Claims by the Estate Releasors and any claims which have been or may be asserted in the Debtor's bankruptcy case, including any claims based on payment of the Settlement Payment; provided, however, the Settling D&O Releasees do not release any claims: (i) for indemnification or contribution; (ii) for entitlement to insurance coverage, under the Policy or otherwise, as provided in the articles, by-laws and/or any agreement and/or (iii) arising under this Agreement, including any claim for breach of this Agreement (collectively, the "Surviving Claims"); provided further, however, that the Settling D&O Releasees waive any right to a distribution from the Estate on account of the Surviving Claims to the extent that the Settling D&O Releasees have not provided the Trustee's counsel with written notice, prior to the submission of the Trustee's Final Report in the Debtor's bankruptcy case to the Office of the United States Trustee, that claims have been asserted by written demand upon the Settling D&O Releasees from which Surviving Claims may arise, and the Settling D&O Releasees shall not object to the Trustee's closing of the Debtor's bankruptcy case or move to re-open the bankruptcy case on account of the Surviving Claims. *See* Settlement Agreement, §2b.

c. <u>Bankruptcy Court Approval of the Settlement</u>. The Settlement Agreement is conditioned upon approval by the Court. *See* Settlement Agreement, § 4.

d. <u>Effective Date</u>. The "Effective Date" shall be the date that the order entered by the Court granting this Motion becomes a final non-appealable order. *See* Settlement Agreement, § 6.

6

**BASIS FOR RELIEF REQUESTED**

16. The Court has the authority to grant the relief requested in this Motion pursuant to section 105 of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Rule 9019 of the Bankruptcy Rules grants the Court authority to approve settlements of claims and controversies after notice and a hearing.[3] Under this authority, the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (*quoting* 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). In addition, this District has recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. *See In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

17. Before approving a settlement under Rule 9019(a) of the Bankruptcy Rules, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *Louise's*, 211 B.R. at 801). To reach such a determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. *Martin*, 91 F.3d at 393. In striking this balance, the court should consider the following factors:

 a. The probability of success in the litigation;
 b. The complexity, expense and likely duration of the litigation;
 c. The possibilities of collecting on any judgment that might be obtained;
 d. All other factors relevant to making a full and fair assessment of the wisdom of the proposed compromise; and
 e. Whether the proposed compromise is fair and equitable to the debtors, their creditors, and other parties in interest.

---

[3] Rule 9019(a) of the Bankruptcy Rules provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

*Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425 (1968). *See also Martin*, 91 F.3d at 393. Fundamental to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry*, 390 U.S. at 425. The *TMT* rule does not require the Court to hold a full evidentiary hearing before a compromise can be approved, but rather the Court's obligation is "to canvas the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" Collier on Bankruptcy at ¶ 9019.2, 9019-4, *quoting In re Drexel Lambert Grp., Inc.*, 134 B.R. 493 (Bankr. S.D.N.Y. 1991). *See Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1983).

18. Application of the various factors cited above demonstrates that the Settlement Agreement should be approved.

### A. Probability of Success in Litigation

19. The Trustee is cautiously optimistic that he would prevail on the Claims if litigation were to be commenced, but he recognizes that the outcome is far from certain. The Executives, of course, believe strongly that there is no liability and would vigorously contest any claims if pursued. The claims resolved by the Settlement Agreement involve complicated issues regarding: (i) whether under Delaware and/or any other applicable law the Executives breached their fiduciary duties of loyalty, good faith, and/or care; (ii) whether and at what point the Debtor became insolvent; (iii) whether the Debtor received reasonably equivalent value in exchange for certain transfers; (iv) certain defenses which have been or may be asserted by the Executives; and (v) whether and to what extent the Debtor sustained damages caused by the actions or inaction of the Executives. Any litigation also would involve addressing and resolving complicated Delaware and/or any other applicable corporate governance issues, including the effects of exculpatory clauses in the Debtor's organizational documents and the business

judgment rule on the Claims against the Executives. The issues, no matter how they would be decided by the Court, are such that the losing party would be likely to pursue appellate review. While there are a myriad of disputed issues, there are certain issues that, if decided against the Trustee, could severely impair the recovery for the Estate. Litigation over these issues would serve only to delay and erode ultimate recovery to the estate and its creditors.

### B.     Complexity of Litigation Involved, and Expense, Inconvenience, and Delay Associated with Litigation

20.     As set forth above, the Claims involve complex legal and factual issues regarding alleged breaches of fiduciary duty, based on challenges to actions, inactions, and business decisions made by some or all of the Executives (and possibly others) over a course of several years in connection with the operations and business dealings and transactions of and among the Debtor, insiders, and others, which would likely require protracted litigation. In addition, litigation would be complex and expensive to pursue because it will require, among other tasks, significant factual discovery and substantial expert witness testimony at trial. Further, the Executives have raised substantial defenses to the Claims and have convinced the Trustee of their intention to vigorously defend the claims at trial and appellate levels, if a settlement is not effectuated. The settlement avoids these obstacles in favor of a prompt and efficient resolution.

### C.     Paramount Interest of Creditors

21.     The settlement also serves the paramount interest of creditors of the Estate. Resolution of the Claims through the Settlement Agreement represents a successful outcome for the Debtor's creditors by efficiently settling significant claims on favorable terms, while obviating the need for potentially protracted litigation, which would likely serve to substantially deplete the remaining available insurance proceeds if required to litigate through the conclusion of trial and any and all appeals. Further, the settlement will enable the Trustee to move forward

with the completion of the administration of this case and distributions to creditors, and avoid what could be years of litigation, including appeals, in connection with these claims.

22. Based on the foregoing, the Trustee submits that approval of the Settlement Agreement is in the best interests of the Estate and its creditors because it eliminates the risk of no recovery, and the possibility of any protracted litigation with the settling parties; eases the administrative burden on this estate; and provides for a meaningful recovery in the amount of $1,250,000 for the Estate and its creditors. The Settlement Agreement therefore represents a compromise between and among the Trustee and the Executives that is fair and equitable and in the best interests of the Estate and creditors.

## **NOTICE**

23. Notice of this Motion has been given to: (a) counsel to the Debtor; (b) the United States Trustee; (c) counsel for the Executives; (d) the Debtor's twenty largest unsecured creditors; and (e) all parties in interest having requested notice to date pursuant to Rule 2002 of the Bankruptcy Rules (the "Service Parties"). In light of the nature of the relief requested herein, the Trustee submits that no other or further notice need be given.

WHEREFORE, the Trustee respectfully requests that the Court enter an order in the form attached hereto approving the Settlement Agreement, authorizing the Trustee to take any and all actions necessary or appropriate to implement the terms and provisions of the Settlement Agreement, providing that the Court retain jurisdiction to enforce the Settlement Agreement, and such other and further relief that is just and proper.

Dated: January 31, 2022                             COZEN O'CONNOR

*/s/ Mark E. Felger*
Mark E. Felger (No. 3919)
1201 N. Market St., Ste. 1001
Wilmington, DE  19801
Telephone:  (302) 295-2000
mfelger@cozen.com

*Counsel to Jeoffrey L. Burtch,*
*Chapter 7 Trustee*